# United States Court of Appeals
## For the Eighth Circuit

---

No. 25-1703

---

Public Interest Legal Foundation, Inc.

*Plaintiff - Appellant*

v.

Steve Simon, in his official capacity as the Secretary of State for the State of Minnesota

*Defendant - Appellee*

v.

United States of America

*Intervenor Defendant - Appellee*

------------------------------

Center for Election Confidence, Inc.; Judicial Watch

*Amici on Behalf of Appellant(s)*

---

Appeal from United States District Court
for the District of Minnesota

---

Submitted: December 16, 2025
Filed: August 28, 2026

---

Before LOKEN, L.R. SMITH, and KOBES, Circuit Judges.

---

LOKEN, Circuit Judge.

Recognizing the "right of citizens of the United States to vote is a fundamental right," Congress passed the National Voter Registration Act (NVRA). 52 U.S.C. § 20501(a). Nicknamed the "Motor Voter Law," the NVRA has four stated purposes:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;
>
> (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;
>
> (3) to protect the integrity of the electoral process; and
>
> (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b). To accomplish these purposes, the NVRA required States to allow potential voters to register to vote in federal elections by mail, in person, and when applying for a driver's license; and also mandated various procedures to ensure the maintenance and accuracy of registration lists, including "reasonable efforts to remove registrants who have become ineligible to vote." <u>See</u> 52 U.S.C. §§ 20503(b), 20507(a)(4). The NVRA also included a public disclosure provision, 52 U.S.C. § 20507(i)(1):

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . .



Appellate Case: 25-1703 Page: 2 Date Filed: 08/28/2026 Entry ID: 5677494

Congress chose not to apply the NVRA to all States. As relevant here, a State is exempt from the NVRA if it allows election-day registration "under law that is in effect continuously on and after August 1, 1994." § 20503(b)(2). Minnesota is one of six States currently exempt from the NVRA.[1]

In January 2024, acting under the NVRA's public disclosure provision, the Public Interest Legal Foundation (PILF) -- a self-proclaimed protector of "the integrity of the electoral process" headquartered in Virginia -- filed a request with the State of Minnesota for its Registered Voter List, "[n]otwithstanding Minnesota's exemption under 52 U.S.C. § 20503(b)(2)." Predictably, Minnesota denied the request. PILF also filed a request under Minnesota Statute § 201.091, subdivision 5, which provides that "the Secretary of State shall provide copies of the public information lists . . . to any voter registered in Minnesota." Because no Minnesota-registered voter joined PILF's request, Minnesota also denied this request. PILF conceded at oral argument that it could obtain the information it seeks by recruiting any registered voter in Minnesota to join its request.

PILF filed this lawsuit against Steve Simon in his official capacity as Secretary of State for the State of Minnesota, arguing that the NVRA's disparate treatment of States rendered Minnesota's exemption from the public disclosure statute unconstitutional. It alleged an "informational injury" and "additional adverse consequences." Minnesota moved to dismiss. The United States intervened on behalf of Minnesota to defend the constitutionality of the law. The district court dismissed PILF's claim on the merits, holding that the "equal sovereignty" principle, see Shelby County v. Holder, 570 U.S. 529 (2013), does not apply to Congress's

[1]Idaho, New Hampshire, Wisconsin, and Wyoming are exempt because they offer election-day registration; North Dakota is exempt because it does not require voter registration at all. See Dep't. of Just.: Civ. Rts. Div., The National Voter Registration Act of 1993 (NVRA): Questions and Answers, https://www.justice.gov/crt/national-voter-registration-act-1993-nvra.



Appellate Case: 25-1703 Page: 3 Date Filed: 08/28/2026 Entry ID: 5677494

power under the Elections Clause in Article I. Subsequently, two of our sister circuits dismissed PILF's claims -- similar to the ones brought here -- for lack of Article III standing. Pub. Int. Legal Found. v. Sec'y of Pa., 136 F.4th 456 (3d Cir. 2025), cert. denied, 146 S. Ct. 1785 (2026); Pub. Int. Legal Found. v. Benson, 136 F.4th 613, 629-32 (6th Cir. 2025), cert. denied, 146 S. Ct. 1772 (2026); see Pub. Int. Legal Found, Inc. v. Wolfe, No. 24-3258, 2026 WL 2425386 at **7-11 (7th Cir. Aug. 19, 2026) (Brennan, J., concurring). Defendant Simon, supported by the United States as amicus, appeals this decision. After careful review, we agree with the other two circuits and conclude that PILF lacks a "concrete" injury under Article III's standing requirements. Accordingly, we vacate the judgment and remand with directions to dismiss PILF's complaint for lack of jurisdiction.

## I. Discussion

"Because standing is a threshold inquiry into federal court jurisdiction, we begin -- and end -- our analysis there." Ojogwu v. Rodenburg L. Firm, 26 F.4th 457, 461 (8th Cir. 2022) (quotation omitted). We review standing *de novo*; PILF, as the plaintiff, bears the burden to establish the jurisdictional element of its claims. Henderson v. Springfield R-12 Sch. Dist., 163 F.4th 478, 491 (8th Cir. 2025) (en banc). "The 'irreducible constitutional minimum' of standing requires plaintiff to show [it] '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Conley v. City of W. Des Moines, 157 F.4th 946, 952 (8th Cir. 2025), quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

We focus here on the first element, which the "Supreme Court has defined as 'an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" Henderson, 163 F.4th at 491, quoting Spokeo, 578 U.S. at 339. PILF makes two arguments in support of its claim it has suffered an Article III concrete injury in fact. First, invoking the so-called



Appellate Case: 25-1703 Page: 4 Date Filed: 08/28/2026 Entry ID: 5677494

"informational injury" doctrine, PILF argues that Minnesota's denial of information to which it is legally entitled under the NVRA is sufficient to constitute an injury in fact. Second, if an informational injury alone is not enough, PILF has alleged four "downstream consequences" from this denial of information to satisfy Article III under TransUnion LLC v. Ramirez, 594 U.S. 413, 442 (2021). Both arguments fail.

**A. Informational Injury.** Quite simply, PILF's first argument contradicts our binding precedent, which it either missed or conveniently ignores. In Hekel v. Hunter Warfield, Inc., 118 F.4th 938, 942 (8th Cir. 2024), cert. denied, 146 S. Ct. 294 (2025), we held that a "purely informational injury" does not constitute a concrete injury in fact under Article III:

> A plaintiff must have suffered a concrete harm in addition to and because of the defendant's violation of federal law. In other words, the other categories of harms [the plaintiff] alleges will have to satisfy the requirement of concreteness. One that does not is a *purely* informational injury. Again, let's suppose that [the plaintiff] did not receive all the information required by law. [The plaintiff] still must identify some downstream consequence from failing to receive it.

(Cleaned up.) See also Ojogwu, 26 F.4th at 462 ("Article III standing requires a concrete injury even in the context of a statutory violation. . . . [Transunion] superseded our prior contrary precedents.") (cleaned up).

For this reason, we reject PILF's first asserted harm, which does little more than repackage the informational injury doctrine in a different form:

> Harm One: First, the Foundation cannot evaluate and scrutinize Minnesota's voter list maintenance activities. . . . The Foundation will use the requested records to study, analyze, evaluate, and scrutinize Minnesota's voter list maintenance activities and Minnesota's compliance with state and federal law, and other best practices. . . .

Crucially, PILF offers no explanation of how the denial of information it seeks impacts it in a "real, and not abstract way." Spokeo, 578 U.S. at 340. It is true that PILF will not be able to "evaluate" or "scrutinize" this data, but this is hardly the sort of "downstream consequence" Article III demands. See, e.g., Ojogwu, 26 F.4th at 462-64. We do not doubt that PILF deeply desires this information, but "an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct." Food & Drug Admin. v. All. for Hippocratic Medicine, 602 U.S. 367, 394 (2024) (cleaned up).

**B. Alleged Downstream Consequences.** PILF's alleged "downstream consequences" fare no better. As some circuits have recognized, any alleged "downstream consequences" or "adverse effects" from a denial of information must "have a nexus to the interest Congress sought to protect" in enacting the disclosure requirement. Kelly v. RealPage Inc., 47 F.4th 202, 214 (3d Cir. 2022); accord Nat'l Sec. Archive v. Cent. Intel. Agency, 104 F.4th 267, 272 (D.C. Cir. 2024) ("To demonstrate a sufficiently concrete and particularized informational injury, the plaintiff must show that (1) it has been deprived of information that . . . a statute requires the government . . . to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure. " (quotation omitted)); Rise for Animals v. Washington, No. 24-1458, 2025 WL 2049056, at *4 (4th Cir. July 22, 2025) (same).

This requirement derives from the Supreme Court's informational injury decisions, including Public Citizen v. Department of Justice, 491 U.S. 440, 446, 449 (1989) (plaintiffs' inability to obtain requested documents hindered their ability to "monitor" the ABA Committee's "workings" and "participate more effectively in the judicial selection process," which fell within the Federal Advisory Committee Act's purposes); Federal Election Commission v. Akins, 524 U.S. 11, 14, 24-25 (1998) (the documents plaintiffs' requested "directly related to [their] voting" and therefore to the essential purpose of the Federal Election Campaign Act to "remedy any actual or

perceived corruption of the political process"); Spokeo, 578 U.S. at 342 ("plaintiff in [a case involving alleged violation of a procedural right] need not allege any additional harm *beyond the one Congress has identified*") (emphasis added); and Transunion, 594 U.S. at 425-26 (an example of concrete harm is hindering plaintiffs' "ability to correct erroneous information before it was later sent to third parties," consistent with the Fair Credit Reporting Act's purposes to promote "fair and accurate reporting and to protect consumer privacy").

PILF's next two alleged "downstream consequences" fail because they contain no "nexus to the interest Congress sought to protect" in requiring disclosure:

> Harm Two: Second, [defendant's] actions are impairing the Foundation's educational programming. The Foundation uses public records and data to educate the public and election officials about numerous circumstances, including the state of their own voter rolls. The Foundation uses public records and data to educate members of Congress about numerous circumstances, including the effectiveness of federal laws such as the NVRA . . . . The Foundation uses records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters . . . about pressing election-related matters. . . .
>
> Harm Three: Third, [defendant's] actions are impairing the Foundation's institutional knowledge upon which it depends for its programming. The Foundation must continually keep its institutional knowledge current and accurate so that it can operate efficiently . . . including for the purposes that Congress intended under the NVRA, such as oversight, remedial programs, law enforcement and education. The Foundation depends on accurate and current institutional knowledge to know where, when, and how to deploy its resources. . . .

As an out-of-state organization unconnected to any registered Minnesota voter, PILF cannot show that Congress intended to protect its educational programming or institutional knowledge, or to ensure efficient deployment of its resources in enacting



Appellate Case: 25-1703 Page: 7 Date Filed: 08/28/2026 Entry ID: 5677494

the NVRA's disclosure provision. See Sec'y of Pa., 136 F.4th at 469; Benson, 136 F.4th at 632; Campaign Legal Center v. Scott, 49 F.4th 931, 938 (5th Cir. 2022). PILF does not explain how creating educational programming or disseminating election-related materials fits within the NVRA's four statutory purposes. Although it alleges -- presumably because it saw this standing issue likely to be asserted -- that it needs to keep its institutional knowledge current to operate for the "purposes Congress intended under the NVRA" -- "we need not give deference to conclusory allegations or bare legal assertions." Lindenwood Female Coll. v. Zurich Am. Ins. Co., 61 F.4th 572, 574 (8th Cir. 2023), citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

We could reject PILF's fourth and final alleged downstream consequence for the same reason that it is based on conclusory bare legal assertions:

> Harm Four: Fourth, [defendant's] actions are harming the Foundation by forcing it to re-prioritize its resources to the detriment of other programmatic priorities. The Foundation must expend additional resources and staff to counteract [defendant's] actions, which limits the Foundation's ability to fund some of its other programming, which includes research, analysis, remedial programming, and law enforcement. . . .

But more fundamentally, this allegation violates the Supreme Court's decision in FDA v. All. for Hippocratic Medicine. In that case, the Supreme Court held that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." 602 U.S. at 394. We reject PILF's fourth harm because it attempts to do just that. See Pub. Int. Legal Found. v. Sec'y of Pa., 136 F.4th at 469.

As the Supreme Court made clear in Transunion, "no concrete harm, no standing." 594 U.S. at 417. Because PILF failed to allege or establish a concrete injury in fact, it lacks Article III standing. Accordingly, we need not and do not reach the merits of PILF's claims. Therefore, the judgment of the district court is vacated and the case is remanded with instructions to dismiss the Complaint.

______________________________



Appellate Case: 25-1703 Page: 9 Date Filed: 08/28/2026 Entry ID: 5677494